McMAHON, Respondent, v. DeKRAAY, Appellant

(16 N. W.2d 308.)

(File No. 8709. Opinion filed November 10, 1944.)

**Philip & Leedom** and **Tom Eastman,** all of Rapid City, for Appellant.

**H. F. Fellows,** of Rapid City, for Respondent.

POLLEY, J. ■ ■ In this action the plaintiff sought and recovered judgment against the defendant for damages for personal injuries received in the state of Arkansas by reason of the alleged negligence of defendant. Predicated upon the adverse ruling of the trial court upon her motions for a directed verdict and for judgment n. o. v., the defendant raises two questions for decision; viz.: (1) Was recovery by plaintiff precluded by the Arkansas guest statute, and (2) Is the evidence sufficient to support a finding of negligence? That these questions arise under the law of Arkansas, and that the evidence must be considered in the light most favorable to plaintiff is conceded.

The question to be decided is whether, as a matter of law, under evidenced circumstances the sharing by plaintiff

of the outlay for gasoline, oil, etc., pursuant to pre-arrangement, excluded her from the classification created by the statuatory words "guest" or guest, "without payment for such transportation." Sections 1302, 1303, and 1304, Pope's Digest, read as follows:

"Section 1302. Action by guest in automotive vehicle prohibited when. That no person transported as a guest in any automotive vehicle upon the public highways of this State shall have a cause of action against the owner or operator of such vehicle for damages on account of any injury, death or loss occasioned by the operation of such automotive vehicle unless such vehicle was wilfully and wantonly operated in disregard of the rights of others.

"Section 1303. Guest defined. The term guest as used in this Act shall mean self-invited guest or guest at suffrance.

"Section 1304. No Cause of action by person riding in motor vehicle as a guest. No person transported or proposed to be transported by the owner or operator of a motor vehicle as a guest, without payment for such transportation, nor the husband, widow, executors, administrators or next of kin of such person, shall have a cause of action for damages against such owner or operator, or other persons responsible for the operation of such car, for personal injury, including death resulting therefrom, by persons while in, entering, or leaving such motor vehicle, unless such injury shall have been caused by the willful misconduct of such owner or operator. And in no event shall any person related by blood or marriage within the third degree of consanguinity or affinity to such owner or operator, or the husband, widow, legal representative, or heirs of such person, have a cause of action for personal injury, including death resulting therefrom, against such owner or operator while in, entering, or leaving such motor vehicle, provided this Act shall not apply to public carriers."

Although the decisions of the Arkansas court supply us with a broad interpretation of these statutes, much to our regret, such of its decisions as have come to our attention do not clearly and conclusively rule the issue which confronts us. In Ward v. George, 195 Ark. 216, 112 S. W. 2d 30, 33, it

was written: "The statute, of course, has no application to passengers who pay for their transportation." In that case, and in Arkansas Valley Cooperative Rural Electric Co. et al. v. Elkins, 200 Ark. 883, 141 S. W. 2d 538, and in Payne v. Fayetteville Mercantile Co., 202 Ark. 274, 150 S. W. 2d 966, that court subscribed to the test of who are guests contained in § 2292 of Blashfield's Cyclopedia of Automobile Law and Practice, vol. 4, Perm. Ed., as follows: "One important element in determining whether a person is a guest within the meaning and limitations of such statutes is the identity of the person or persons advantaged by the carriage. If, in its direct operation, it confers a benefit only on the person to whom the ride is given, and no benefits, other than such as are incidental to hospitality, companionship, or the like, upon the person extending the invitation, the passenger is a guest within the statutes; but, if his carriage tends to the promotion of mutual interests of both himself and the driver and operates for their common benefit or if it is primarily for the attainment of some objective or purpose of the operator, he is not a guest within the meaning of such enactments. Of course, a passenger for hire is not within their operation, regardless of whether the passenger or some one else pays or promises to pay for the transportation."

In Froman et al. v. J. R. Kelley Stave & Heading Co., 196 Ark. 808, 120 S. W. 2d 164, it was decided that mere vague conversation about sharing expenses indulged in by host and guest after the trip is underway is not enough to exclude one from the statutory guest class.

Without attempting a complete review of the authorities, we turn for aid to the adjudications of other states which interpret similar statutes.

In McCann v. Hoffman, 9 Cal. 2d 279, 70 P. 2d 909, 911, under a statute defining a guest as one who "accepted a ride without giving compensation therefor," the evidence described a pleasure trip by two couples in the car owned by the one couple, under an unexpressed mutual understanding that the expenses would be shared. In holding the injured party a guest the court said:

"The great weight of authority is to the effect that the sharing of the cost of gasoline and oil consumed on a trip,

when that trip is taken for pleasure or social purposes, is nothing more than the exchange of social amenities and does not transform into a passenger one who without such exchange would be a guest, and consequently is not payment for the transportation or compensation within the meaning of the statute. It is obvious that if a different result obtained under any construction of the statute its purposes would be defeated and its effect annulled. The relationships which will give rise to the status of a passenger must confer a benefit of a tangible nature and are limited. * * *

"Therefore, where a special tangible benefit to the defendant was the motivating influence for furnishing the transportation, compensation may be said to have been given. But it is not given where the main purpose of the trip is the joint pleasure of the participants. The payment of a portion of the expense, as for gasoline and oil consumed on the trip, is merely incidental and does not constitute the moving influence for the transportation. The provocation for the offer of transportation remains the joint social one of reciprocal hospitality or pleasure."

The foregoing language is urged by the defendant in his argument for reversal. In response, plaintiff quotes from the Restatement of the Law of Torts, § 490, as follows: "The phrase 'passenger in a vehicle' is used to denote the fact that the plaintiff is one who is being carried by another for hire. The word 'guest' is used to denote one whom the owner or possessor of a motor car or other vehicle invites or permits to ride with him as a gratuity, that is, without any financial return except such slight benefits as it is customary to extend as part of the ordinary courtesies of the road. Thus, one who rides in another's car does not cease to be a guest by paying the bridge or ferry tolls which it is the local custom for a guest to pay. On the other hand, if there is a prior arrangement that there shall be a substantial sharing of the expenses, the host and guest relation does not exist, the person so sharing expenses may be either a passenger or a participant."

In support of this text plaintiff directs us to a number of cases, to some of which we make reference:

In Teders v. Rothermel, 205 Minn. 470, 286 N. W. 353, 354, the Florida statute which contains the word "guest" * * * without payment for such transportation," was presented for interpretation, in a case involving a trip to that state from Nebraska under a previous agreement to share expenses. In that case the court said:

"2.   To be within its reach the rider in the car of another must not only be 'guest or passenger', but also riding 'without payment for such transportation'.   It is significant that the thing determinative is not 'hire' or 'compensation', but 'payment'.   'Compensation', accurately used, means payment in money, or other benefit, which will compensate in the strict sense, that is, make even, or be measurably the equivalent of that for which it is given.   Kerstetter v. Elfman, [supra].   'Hire' might apply only where both machine and driver are hired for the occasion.

"The words of the Florida law can properly be given no such narrow scope.   Payment is all that is required.   The amount of money or other thing constituting the payment need not compensate or make even, nor need it be given, in the technical sense, as 'hire' of driver and car.   Any sum agreed upon as payment and paid, as under the facts presented by these pleadings, amounts to payment for transportation so as to prevent application of the statute.

"That follows because the purpose of the agreement disclosed by the pleadings was on the one hand to assure plaintiff and the other passengers the right to travel as such in defendant's car on the southern jaunt which all were to enjoy.   In return, the benefit to defendant was the substantial reduction of three-fourths of the amount which otherwise would have come out of his own pocket for fuel and lubricants.   It is not persuasive for the opposite view that he got nothing for use of his car or his own services as chauffeur.   The money he received was nonetheless 'payment' because it was not compensatory payment for all the items of car use and driving which defendant furnished.   Payment for plaintiff's transportation there was.   That, in our view, was enough to take the case outside the operation of the Florida statute."

In Smith v. Clute, 277 N. Y. 407, 14 N. E. 2d 455, 458, the court construed the Montana statute of the "not for hire" type in a case where expense was shared by previous agreement by friends in making a California trip. The court said: "The question whether sharing expenses of an automobile trip results in such benefit to the owner or operator as to take a passenger out of the purview of a guest statute has been before the courts in a number of cases. Where there is no fixed understanding or agreement for sharing expenses, but merely a likelihood or a general statement by the passenger that he will pay his share, it is not sufficient. (Ernest v. Bellville, 53 Ohio App. 110, 4 N. E. 2d 286. See Sleeper v. Massachusetts Bonding & Ins. Co., 283 Mass. 511, 186 N. E. 778, explaining Askowith v. Massell, 260 Mass. 202, 156 N. E. 875), and this court has so held in affirming a dismissal of a complaint where the Connecticut guest statute was involved. (Master v. Horowitz, 237 App. Div. 237, 261 N. Y. S. 722 affirmed 262 N. Y. 609, 188 N. E. 86). On the other hand, where there is a definite agreement, as in the case at bar, a number of states have permitted recovery for ordinary negligence, holding the passenger who contributed toward the expenses was not a guest within the purview of the statute. Beer v. Beer, 52 Ohio App. 276, 3 N. E. 2d 702; Kerstetter v. Elfman, 327 Pa. 17, 192 A. 663; Campbell v. Campbell, 104 Vt. 468, 162 A. 379, 85 A. L. R. 626; O'Brien v. Woldson, 149 Wash. 192, 270 P. 304, 62 A. L. R. 436; Lloyd v. Mowery, 158 Wash. 341, 290 P. 710. Contra, McCann v. Hoffman, 9 Cal. 2d 279, 70 P. 2d 909; Morgan v. Tourangeau, 259 Mich. 598, 244 N. W. 173. As Mr. Justice Stern of the Pennsylvania Supreme Court pointed out, 'Had plaintiffs not made their agreement to share the expenses, defendant himself would have been obliged to pay for all the gasoline and oil consumed, and since the presence of plaintiffs in the automobile did not add in any way to the cost of operation of the car, the money furnished by plaintiffs was a clear contribution, a net saving, to defendant, reducing the amount which he would have been required to expend had he been transporting plaintiffs gratuitously. Suppose, for example, that the expenses had been calculated in advance and plaintiffs had actually paid their proportionate share to defendant before

starting on the trip, stating that they were giving him the money in consideration of his transporting them to Lewes.' Kerstetter v. Elfman, 327 Pa. 17, at page 20, 192 A. 663, 664."

In Bushouse v. Brom, 297 Mich. 616, 298 N. W. 303, 305, the court said:

"The indefinite contemplated arrangement that plaintiff would contribute something towards the expense of this mutual pleasure trip, possibly one-third or one-half of such expense, did not establish plaintiff's legal status as a passenger for hire. * * *

"We do not hold herein that under a given state of facts an express agreement to pay a given proportion of the expenses of operating an automobile may not constitute the one transported a passenger for hire. But each case must be decided in the light of its own facts; and we think it is always important to ascertain, if possible, what it was that primarily motivated the undertaking. In the instant case it was clearly the friendship and social relation of these parties which resulted in plaintiff going on the trip with defendant. It was not a commercial arrangement or one in which the owner or driver of the automobile was induced to transport a passenger for an agreed consideration."

In Duncan v. Hutchinson, 139 Ohio St. 185, 39 N. E. 2d 140, 143, the court said: "But nearly all of the decisions on this subject may be reconciled when the test is applied as to whether the trip has a business or social aspect. A study of the cases discloses that whenever the person paying for gasoline, oil or other automobile expenses is held to be a passenger, it appears that the contract for transportation bears one or more of the indices of a business arrangement, even though the ultimate purpose may be for pleasure."

■ Reason, and these authorities, have induced the conclusion that notwithstanding the fact that a trip may have a social complexion, if the owner of the vehicle insists upon a prearrangement by which his passenger friend is obligated to share the expense, the provision thus made is for such a payment for the transportation as will defeat the relationship of host and guest under the Arkansas statute. The words of the Arkansas court in Froman et al., v. J. R. Kelley Stave & Heading Co. supra [196 Ark. 808, 120 S. W. 2d 165], as fol-

lows: " * * * it is evident that Hudkins did not require that Mrs. Froman pay any part of the cost of the gasoline as a condition upon which she would be taken to DeWitt" reinforce this conclusion.

█ In the instant case the facts reveal that the parties are friends of long standing and that at least one like trip had been taken on a share the expense basis. The trip was not wholly social in aspect. The defendant's married daughter and the plaintiff's married son lived at Atlanta, Georgia, and their respective desires to go to that point were for separate like purposes. Notwithstanding circusmstances which cast suspicion upon the testimony of the witnesses, a jury could believe that thought of the trip originated in the mind of defendant, and that she in substance said to plaintiff that she wanted to go and see her daughter and did not feel that she could afford to do so, but that she would go if plaintiff would go along and share the expense, and that it was pursuant to such an express agreement that the trip was made. It follows that, in our opinion, it cannot be said as a matter of law that plaintiff was a guest within the contemplation of the Arkansas statute.

█ The question of defendant's negligence remains for consideration. The facts are without dispute. Just prior to the overturning of the car, defendant was driving at a speed of about 40 to 45 miles per hour. She was on a main hard surface road that was somewhat roughened by breaks and potholes. It had just rained in the vicinity and the road was wet. As she came down a gradual incline, the road bore to the right around a bend. In some manner the wheels of the car dropped off the right-hand edge of the pavement on to the dirt shoulder at a place where that shoulder was about four inches below the pavement, and defendant lost control. The car first went to the left of the pavement, and then to the right, and came to rest in the right ditch after turning over more than once. The evidence does not disclose whether defendant reduced her speed in response to the suggestion of plaintiff made just before the described events.

Although these facts are not in dispute, we think they provide reasonable minds with a basis from which to draw different inferences; and room for reasonable difference of

opinion. Concededly the Arkansas speed regulations provided that: "Where no stated speeded is posted then the lawful speed shall be that which is reasonable and prudent under the circumstances; * * *." The condition of the road, the decline and the bend therein, constitute the circumstances against which the care exercised by plaintiff must be judged. It seems too obvious to us for serious argument that a jury would be warranted in finding that defendant failed to exercise due care in adjusting her speed and control to these visible adverse circumstances, and that her failure in that respect constituted the proximate cause of the plaintiff's injuries.

The judgment of the learned trial court is affirmed.

All the Judges concur.