DEVIN, J., concurring.
SEAWELL and ERVIN, JJ., join in concurring opinion. *Page 779 
Civil action for recovery of damages alleged to have been sustained by the respective plaintiffs as a result of the negligence of the defendant in the operation of his automobile in which the plaintiffs were passengers.
The three actions were consolidated for trial by consent of all parties.
The plaintiffs allege in their respective complaints, that Harold Morse, acting for himself and the other members of his family, contracted with the defendant to transport the plaintiffs from Winston-Salem, N.C. to Elizabeth, N. J., and that it was agreed that Harold Morse should provide money for the purchase of all the gasoline and oil used on the trip, that the defendant would receive no compensation or profit out of the trip, it being understood and agreed that the trip was for the mutual pleasure and convenience of all concerned.
The defendant denies these allegations and alleges that solely as an accommodation to the plaintiffs he offered to transport the plaintiffs from Winston-Salem, N.C. to New Jersey, over the week-end, without charge to the plaintiff, Harold Morse; that the plaintiff, Harold Morse, voluntarily offered to pay for the gasoline and oil on the trip which was satisfactory to the defendant.
The plaintiff, Harold Morse, testified as follows: "I first talked with Walker at the Veterans' Club, on the night of 16 January, about making the trip to Elizabeth, N.J. . . . I had planned to go by train the next day. Four or five of us got to talking about making trips, and I mentioned I was going to New Jersey . . . the next evening, . . . and finally Raphelius Walker, Lindsay Walker and another fellow who I do not remember, and I, said the four of us would pay the expenses four ways. We planned to leave about 9:00 o'clock the next morning . . . in Mr. Walker's car. We did not leave next morning because nobody came to the dairy to pick me up. . . . I waited at the dairy until noon. . . . Mr. Walker came to my house about 2:30 that afternoon and said he did not have the money to make the trip and the other boys did not want to go, that they had changed their minds, and he would not be able to go; that he would like to make the trip, but he would not be able to go. I told him I had the money, I would go the expenses for the gas and oil up there if he would take my wife and my other baby with us. Walker said `Yes' and asked me if it would be all right to take a friend of his with us, and I said `Yes.' Walker then left and came back to my house about 3:00 o'clock with his friend, Louis Larimore."
According to this plaintiff's further evidence, the plaintiffs and one other Morse child, the defendant and Louis Larimore left Winston-Salem for Elizabeth, N. J., about 3:00 p.m., on Saturday, 17 January, 1948. Later in the afternoon this plaintiff purchased gas and oil for the car. *Page 780 
It began to rain about 6:00 o'clock and continued to rain until about 7:30, when the collision occurred near South Hill, in the State of Virginia. The defendant was driving the car at the time of the collision. The highway was three lanes wide, and the defendant was proceeding north at a speed of approximately 45 miles per hour, when his car collided with a car driven by Charlie Whittle, a colored man, proceeding south on the highway. The plaintiffs were in the back seat of the car and did not see how the accident occurred. But this plaintiff testified the defendant told him afterwards: "He looked up and saw this car coming towards him in his lane, on the right-hand side of the road, and he cut his car to the left in order to avoid a head-on collision. Mr. Walker did tell me that he was going along on his right-hand side of the highway, in his right-hand lane, and that he looked up and saw the lights on this other car coming towards him, in his lane, and he cut to the left to avoid a head-on collision."
Charlie Whittle testified: "I was driving south on U.S. Highway No. 1. I was in the center lane. I had gotten in the center lane about 75 yards or more back up the road toward the north. I was driving slow. . . . We were near the turn. . . . There were three cars that met me heading north and they went on by. Mr. Walker was the fourth car coming north. He was about 20 yards behind the last car that passed on and I didn't know whether he was intending to pass the car or what but he pulled out from behind the other car as if he was coming towards me, I tried to miss him by cutting a little further to my left. The speed of my car was less than 15 miles an hour." According to this witness he pulled his car into the center lane for the purpose of making a left turn into a dirt road which he was nearing but had not reached at the time of the collision. The defendant's car collided with the right front end of the car driven by Whittle.
The plaintiffs also offered evidence tending to show that the windshield wiper on the defendant's car was not working properly and they had requested him to get it fixed, but he neglected to do so.
At the close of plaintiffs' evidence the defendant moved for judgment as of nonsuit in each action, and the motion was granted.
Plaintiffs appeal and assign error.
The plaintiffs having sustained their injuries in the State of Virginia, their right to recover therefor must be determined by the law of that jurisdiction. Wise v. Hollowell, 205 N.C. 286, 171 S.E. 82; *Page 781 Baird v. Baird, 223 N.C. 730, 28 S.E.2d 225; Harper v. Harper, andWickham v. Harper, 225 N.C. 260, 34 S.E. (2), 185.
The defendant contends that at the time the plaintiffs were injured they were his guests within the meaning of the Virginia guest statute, which reads as follows: "No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation and no personal representative of any such guest so transported, shall be entitled to recover damages against such owner or operator for death or injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such death or injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator." Virginia Code of 1942, Section 2154 (232).
The plaintiffs contend, however, that when the defendant informed Harold Morse that he could not make the trip to New Jersey because he was without funds, and consented to go only after Harold Morse agreed to purchase all the gas and oil to be used on the trip, they were not guest passengers within the purview of the Virginia statute.
In our opinion, if the plaintiffs were not guest passengers within the purview of the Virginia statute, the evidence of negligence adduced in the trial below is sufficient to carry these cases to the jury, otherwise not. We do not think the evidence is sufficient to establish "gross negligence or willful and wanton disregard of the safety" of these plaintiffs at the time of their injury, which finding is a prerequisite to a recovery under the provisions of the Virginia statute. Hale v. Hale, 219 N.C. 191,13 S.E.2d 221; Keen v. Harmon, 183 Va. 670, 33 S.E.2d 197; Woodrum v.Holland, 185 Va. 690, 40 S.E.2d 169; Austin v. Austin, 186 Va. 382,43 S.E.2d 31; Hill v. Bradley, 186 Va. 394, 43 S.E.2d 29; Reel v.Spencer, 187 Va. 530, 47 S.E.2d 359; Miller v. Ellis, 188 Va. 207,49 S.E.2d 273.
The authorities are not altogether in agreement as to what facts and circumstances are necessary to destroy the relationship of host and guest under the provisions of guest statutes, where the passenger is riding in an automobile or other motor vehicle by invitation or permission of the owner or possessor thereof.
However, the weight of authority seems to be to the effect that where the owner of a vehicle insists upon or requests that a passenger obligate himself to share the expenses of a trip, and the passenger agrees to be so obligated, the agreement will constitute such a "payment for transportation" as will defeat the relationship of host and guest. McMahonv. DeKraay, 70 S.D. 180, 16 N.W.2d 308; Fortuna v. Sangster, 296 N.Y. 923,73 N.E.2d 40; Miller v. Fairley, 141 Ohio St. 327, 48 N.E. *Page 782 
(2) 217; Sprenger v. Braker, 71 Ohio Ap. 349, 49 N.E.2d 958; Pence v.Berry, 13 Wn. (2) 564, 125 P.2d 645; Teders v. Rothermel, 205 Minn. 470,286 N.W. 353; Smith v. Clute, 277 N.Y. 407, 14 N.E.2d 455; Potterv. Juarez, 189 Wn. 476, 66 P.2d 290; Beer v. Beer, 52 Ohio Ap. 276,3 N.E.2d 702; Copp v. Vanhise (1914; C.C.A. 9th), 119 F. (2) 691;Campbell v. Campbell, 104 Vt. 468, 162 A. 379, 85 A.L.R. 626; Kerstetterv. Elfman, 327 Pa. 17, 192 A. 663.
We think the opinion in the case of Hale v. Hale, supra, supports this view. There Barnhill, J., speaking for the Court, said: "The motorist who transports for pay or some other direct benefit is accountable as at common law, while the `host' who transports his `guest without payment for such transportation' is liable only for injuries caused by his gross negligence or willful or wanton misconduct. The passenger is `a guest without payment for such transportation' when there is no contractual relationship between the parties under which the passenger was obligated to pay for the transportation and there are no sufficient facts to show that the transportation was contractually for the mutual benefit of both the passenger and the operator. Master v. Horowitz, 262 N.Y. 609,188 N.E. 86, 95 A.L.R. 1182. It does not include persons who are being transported for the mutual benefit of both the passenger and the operator or owner of the car. However, the extent and nature of the reciprocal advantages which will exclude the passenger are not unlimited but are confined to certain definite relations, such as Master and Servant, and to tangible benefits accruing from the transportation — as in saving time for which he, as master, pays — facilitation of a servant's work, or the like. Kruy v. Smith, 144 A. 304; Sullivan v.Richardson, 6 Pac.2d 567; Crawford v. Fosier, 293 P. 841 (Cal.);Master v. Horowitz, supra; Chaplowe v. Powsner, 175 A. 470 (Conn.), 95 A.L.R. 1177."
In the case of McMahon v. DeKraay, supra, which was an action to recover for personal injuries sustained in Arkansas, the appeal presented the identical question now before us. The Arkansas statute, like the Virginia statute, excluded recovery except for gross negligence when the guest was transported "without payment for such transportation." The Supreme Court of South Dakota said: "Reason, and these authorities, have induced the conclusion that notwithstanding the fact that a trip may have a social complexion, if the owner of the vehicle insists upon a prearrangement by which his passenger friend is obligated to share the expense, the provision thus made is for such a payment for the transportation as will defeat the relationship of host and guest under the Arkansas statute."
In Smith v. Clute, supra, the Court of Appeals of New York, in considering whether or not a statute of the State of Montana, permitting a guest to sue only for gross negligence, precluded the plaintiff from *Page 783 
recovery, notwithstanding the existence of an agreement which required the plaintiff to pay her pro rata part of the expenses on a trip to California, the Court said: "The question whether sharing expenses of an automobile trip results in such benefit to the owner or operator as to take a passenger out of the purview of a guest statute has been before the courts in a number of cases. Where there is no fixed understanding or agreement for sharing expenses, but merely a likelihood or a general statement by the passenger that he will pay his share, it is not sufficient . . ., and this court has so held. . . . On the other hand, where there is a definite agreement, as in the case at bar, a number of states have permitted recovery for ordinary negligence, holding the passenger who contributed toward the expenses was not a guest within the purview of the statute." And the court held the plaintiff was not a guest within the purview of the Montana statute.
Likewise, the same court, in considering the Virginia statute in Fortunav. Sangster, supra, held that the evidence in the case showed there was a fixed agreement between the passengers in the automobile involved and the owner and driver thereof, to pay a given proportion of the expenses of the trip which took such passengers "out of the class of gratuitous guests within the meaning of the Virginia statute. Motor Vehicle Code of Virginia, Sec. 2154, subsec. 232."
The authorities seem to hold uniformly that the word "guest" within the meaning of the various automobile guest statutes, denotes one whom the owner or possessor of an automobile or other vehicle permits or invites to ride with him without receiving any remuneration or other benefit therefor, except such slight benefits as may be classed as mere courtesies. These authorities also hold that the voluntary offer or insistence of a guest to share the expenses of an automobile trip, or the voluntary purchase of gas and oil by such guest while on a trip, will not destroy the relationship of host and guest within the meaning or purview of automobile guest statutes. Such voluntary contributions to the expense of an automobile trip, will not ordinarily be construed as compensation or payment for transportation, but will be considered mere acts of courtesy. Hale v. Hale, supra; Fiske v.Wilkie, 67 Cal. Ap. (2) 440, 154 P.2d 725; Brady v. Harris, 308 Mich. 234,13 N.W.2d 273; McDougald v. Coney, 150 Fla. 748, 9 So.2d 187;Bushouse v. Brow, 297 Mich. 616, 298 N.W. 303; McCown v. Schrom,139 Neb. 738, 298 N.W. 681; Mayer v. Puryear
(1940 C.C.A. 4th), 115 F. (2) 675; Stephen v. Spaulding, 32 Cal.App. (2) 326,89 P.2d 683; Elliott v. Benner, 146 Kan. 827, 73 P.2d 1116; Vancev. Grohe, 223 Iowa 1109, 274 N.W. 902; Master v. Horowitz, supra.
Each case must be decided in the light of its own facts. Here the evidence tends to show that the defendant was anxious to make this trip, but *Page 784 
was without sufficient funds to do so. Whether or not the plaintiff, Harold Morse, and the defendant entered into an agreement which obligated Morse to purchase the gas and oil to be consumed on the trip and such agreement was made a condition or consideration, without which the defendant would not have undertaken the trip, is a question for the jury. If such a contract was made, we think payment of the gas and oil bills would constitute "payment for transportation" within the purview of the Virginia guest statute.
We deem it unnecessary to discuss and distinguish the additional authorities cited by the appellee.
The motion for judgments as of nonsuit should have been overruled.
Reversed.